IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ST. VINCENT HOSPITAL,**

        **Plaintiff,**

v.                                                         No. _____

**DISTRICT 1199NM, NATIONAL
UNION OF HOSPITAL AND
HEALTHCARE EMPLOYEES,
LOCAL 1199, AFSCME, AFL-CIO,**
        **Defendant.**

## MEMORANDUM IN SUPPORT OF THE HOSPITAL'S PETITION TO VACATE ARBITRATOR'S AWARD REGARDING ARBITRABILITY AND FOR INJUNCTIVE RELIEF

Plaintiff St. Vincent Hospital ("the Hospital"), by and through its attorneys, Jackson Lewis LLP, hereby submits its Memorandum in Support of its Petition to Vacate Arbitrator's Award Regarding Arbitrability and for Injunctive Relief. The Hospital's Petition to Vacate Arbitrator's Award Regarding Arbitrability and for Injunctive Relief ("Petition") is submitted concurrently herewith.

### Summary of Memorandum

Arbitrator Russell E. Bergstedt, Jr. ("the Arbitrator") exceeded his powers in violation of the Federal Arbitration Act, 9 U.S.C. § 10(a)(4) when he determined that the grievance underlying FMCS Case No. 08-50178 was procedurally arbitrable. The Arbitration Award does not derive its essence from the Collective Bargaining Agreement from whence his powers emanate. The Arbitration Award does not comport with the provisions of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* The Arbitration Award does not comport with the basic tenets of contract law. The Arbitration Award is

in contravention of the provisions of the Collective Bargaining Agreement, and totally ignores the validity of a settlement between a former Hospital employee and the Hospital. In fact, the proviso to Section 9(a) of the Act (29 U.S.C. § 159(a)), specifically contemplates that such settlement agreements are valid expressions of an individual employee's right to adjust grievances with her or his employer.

Rather, the Arbitration Award is based solely on the language of a provision in one of the settlement agreement documents that lies outside the Collective Bargaining Agreement. In fact, the provision directly contradicts the explicit language of the Collective Bargaining Agreement. As such, the Arbitration Award effectively expands the Grievance and Arbitration Procedure of the Collective Bargaining Agreement outside the good-faith negotiation process. Accordingly, the Hospital petitions this Court to enjoin further arbitral proceedings in this matter and to vacate the Arbitration Award regarding procedural arbitrability pursuant to 9 U.S.C. §§ 6 and 10 and Rules 7, 12(b)(1) and (6), and 81(a)(6)(B) of the Federal Rules of Civil Procedure.

## Statement of Proceedings

The Hospital and Defendant District 1199NM, National Union of Hospital and Healthcare Employees, Local 1199, AFSCME, AFL-CIO ("the Union") are parties to three collective bargaining agreements governing the terms and conditions of three separate bargaining units: The Nurses' Unit, the Technical Employees' Unit, and the Service and Maintenance Employees' Unit. For purposes of this Petition and Memorandum, the pertinent Collective Bargaining Agreement ("CBA") is that between the Hospital and the Technical Employees' Unit ("the Tech Unit"). *Petition*, ¶ 2. The CBA is the product of good-faith negotiations between the Union and the Hospital and, as

with all such agreements, constitutes the complete agreement between the parties. *Petition*, ¶ 2. The underlying dispute in this matter involves a grievance filed by the Union on behalf of a former Tech Unit employee, Ms. Lydia Froschle ("the Grievant"), after the grievance was settled. *Petition*, ¶ 3.

On July 2, 2007, the Hospital and the Union participated in a hearing before the Arbitrator to determine the procedural arbitrability of the underlying grievance. *Petition*, ¶ 3. Both parties submitted post-hearing briefs at the close of the hearing. *Petition*, ¶ 4.

On September 4, 2007, the Hospital issued a "Corrective Action Form" recommending the Grievant's termination from her employment. *Petition*, ¶ 5. In light of the recommendation, the Union offered to have the Grievant resign in lieu of termination. *Id.* On September 5, 2007, after consulting with her Union representatives and the Union's Attorney, the Grievant entered into two negotiated settlement agreements governing her resignation. *Petition*, ¶ 6. The Union Attorney drafted one of the settlement documents, the "Agreement Between Lydia Froschle and St. Vincent Regional Medical Center Dated September 5, 2007 ("Union-Drafted Agreement")." *Petition*, ¶ 7. The Union-Drafted Agreement is signed by the Hospital and Grievant only. *Petition*, ¶ 8. The Hospital drafted the other settlement document, the "Agreement and Release ("Release Agreement")." *Petition*, ¶ 9. The Release Agreement is signed by the Hospital and Grievant, is witnessed by a Union official, and is referenced in the Union-Drafted Agreement. *Petition*, ¶ 10.

The parties negotiated the terms of the two settlement agreements after the Grievant agreed to resign in exchange for certain benefits offered by the Hospital in consideration for her resignation. *Petition*, ¶¶ 5-6. During the settlement negotiations,

the Union's Attorney insisted that a paragraph be included in the Union-Drafted Agreement that purports to preserve the Union's right to grieve disputes pending at the time of the negotiations ("Paragraph 3"). *Petition*, ¶ 11. The only grievance concerning the Grievant pending at the time of the negotiations was one dated July 5, 2007, alleging discrimination for Union Activities. *Petition*, ¶ 12.

Even though the Grievant signed the settlement agreements on September 5, 2007, the Union filed a grievance on September 12, 2007 alleging that the Grievant was "terminated without just cause." *Petition*, ¶ 13. On September 14, 2007, the Hospital and the Union combined the September 12 and July 5 grievances pursuant to a Memorandum of Agreement ("MOU). *Petition*, ¶ 14. The MOU provided that the combined grievances be "moved" to Step 3B of the CBA Grievance and Arbitration Procedure, which allowed the grievances to be heard by the president of the Hospital or his designated representative. *Petition*, ¶¶ 14-15.

Pursuant to the MOU, on September 18, 2007, the president of the Hospital, Mr. Alex Valdez, heard the combined grievances. *Petition*, ¶ 17. On September 25, 2007, he issued his decision. *Id*. Mr. Valdez determined that the combined grievances were without merit. *Id.* The Grievant had resigned her position with the advice and counsel of the Union and its Attorney. *Id.* The bases listed for the discrimination claim had no support in the CBA. *Id.* Nevertheless, the Union sought to arbitrate the Grievant's resignation. *Petition*, ¶ 18.

In January 2008, the Hospital filed a Motion to Dismiss with the Arbitrator. *Petition*, ¶19. In its Motion, the Hospital asserted that the Arbitrator lacks subject matter jurisdiction to arbitrate a resignation. *Petition*, ¶19. The Arbitrator denied the Hospital's

Motion to Dismiss on February 15, 2008. *Petition*, ¶ 20. In the denial, the Arbitrator determined that the Release Agreement did not apply. *Id.* The Arbitrator held that the language of Paragraph 3 does not "prevent an arbitrator from awarding any remedy in the process including reinstatement and back pay." *Id.* The parties then participated in the hearing on the procedural arbitrability of the grievance on July 2, 2008, and submitted post-hearing briefs. *Petition*, ¶¶ 21-23.

In its post-hearing brief, the Hospital made three arguments: (1) neither of the two settlement agreements resolving the Grievant's resignation permit the Arbitrator to hear the matter, as resignations are not arbitrable under the terms of the CBA; (2) the grievance is not procedurally arbitrable as the two settlement agreements are valid settlement agreements between the Grievant and the Hospital pursuant to the proviso to Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a); and (3) Paragraph 3 of the Union-Drafted Agreement renders the Union-Drafted Agreement illusory and thus the grievance is not arbitrable under contract law. *Petition*, ¶ 23. However, in his Arbitration Award, the Arbitrator determined that the arbitration on the merits could proceed, because "Paragraph 3 [of the Union-Drafted Agreement] trumps all the Employer's arguments." *Petition*, ¶ 24. In addition, the Arbitrator again determined that the Release Agreement had no applicability whatsoever. *Petition*, ¶ 25.

## **Grounds for the Petition**

The Federal Arbitration Act provides that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject

matter submitted was not made." 9 U.S.C. § 10(a)(4). Furthermore, "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions." 9 U.S.C. §6. Because the Hospital brings this matter to the Court pursuant to 9 U.S.C. § 10(a)(4) alleging that 1) the Arbitrator exceeded his powers or so imperfectly executed them that no mutual, final, or definite award on the subject matter was made; 2) that the Arbitrator in fact lacks jurisdiction to hear the matter; and 3) that the matter contains no allegations for which relief may be granted, the Hospital styles this matter in the manner of motion practice pursuant to Rules 7, 12(b)(1) and (6), and 81(a)(6)(B) Fed. R. Civ. P. The Petition[1] is thus properly brought. *See O.R. Securities, Inc. v. Professional Planning Associates, Inc.*, 857 F.2d 742, 746 (11th Cir. 1988) ("The proper procedure [for bringing an action to vacate an arbitration award] … is for the party seeking to vacate an arbitration award to file a Motion to Vacate in the district court").

### I. The Arbitrator Exceeded His Powers As Granted by the CBA in Declaring the Grievance to Be Procedurally Arbitrable; Therefore, the Arbitration Award Should Be Vacated

The Arbitrator's powers to hear and decide grievances stem directly from the CBA. The Arbitrator's powers are limited by Article 29, Section 29.03 of the CBA, which states, "the arbitrator shall not have the power to add to, subtract from, or in any way modify the terms of this Agreement [the CBA], and <u>shall limit her/his decision strictly to an interpretation of the language in this Agreement</u>." *Exhibit 1 to the Petition*, Article 29, § 29.03 (emphasis added). The Arbitrator's powers are also limited by Article 29, Section 29.04 of the CBA, which states, "It is the intention of the parties that <u>the</u>

---

[1] While the Act provides that requests to vacate arbitration awards under the FAA be made in the manner of motion practice, 9 U.S.C. § 6, "the liberality of the … Federal Rules is such that an erroneous nomenclature does not prevent the court from recognizing the true nature of a motion." 857 F.2d at 746.

<u>grievance procedure set forth herein shall be the sole and exclusive remedy of the parties for any alleged breach of this Agreement</u>… Therefore, resort to any other remedy at law or at equity, administrative or judicial, shall constitute a waiver of the grievance." *Exhibit 1 to the Petition*, Article 29, § 29.05 (emphasis added). Notwithstanding these express limitations, the Arbitrator exceeded his powers, because:

1. the underlying Collective Bargaining Agreement does not provide for arbitrating <u>resignations</u>;

2. under the explicit terms of the CBA, the Arbitrator lacks the ability to grant the relief sought; and

3. the explicit terms of the CBA preclude arbitration of <u>settled</u> grievances.

**1)   The Collective Bargaining Agreement does not provide for the arbitration of resignations**

The relationship between parties to the underlying grievance – the Hospital and the Union – is governed by the terms of the CBA. The CBA contains explicit terms as to what matters are grievable under Article 29, the Grievance and Arbitration provision of the CBA. Article 10, Section 10.01 of the CBA explicitly limits those matters subject to the Grievance and Arbitration Article to <u>discharge, discipline, and suspension</u>. *Exhibit 1 to the Petition*, Article 10, § 10.01 (emphasis added). The CBA explicitly states that Article 29 is the sole method for resolving disputes under the contract. *Exhibit 1 to the Petition*, Article 29, § 29.05. There is no provision in the CBA that allows the parties to submit resignations to arbitration. *See Exhibit 1 to the Petition.* "The arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute." *First Options of Chicago, Inc., v. Kaplan*, 514 U.S. 938, 943 (1995). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes –

<u>but only those disputes</u> – that the parties have agreed to submit to arbitration." *Id* (emphasis added). Therefore, the Arbitrator does not possess jurisdiction to hear grievances based on resignations. *See* Rule 12(b)(1) Fed. R. Civ. P.

      The Arbitrator explicitly found that the Grievant, upon advice of the Union and the Union's Attorney, resigned her employment with the Hospital in lieu of termination. *Petition*, ¶¶ 5-6. The two negotiated settlement agreements that the Grievant signed, on advice of the Union and the Union's Attorney, explicitly reference the Grievant's separation from her employment as a "resignation." *Exhibit 3 to the Petition*, ¶ 1 ("Lydia Froschle hereby agrees to tender her written resignation effective September 5, 2007"); *Exhibit 3 to the Petition*, ¶ 2 ("In consideration for her resignation … [the Hospital] hereby agrees to the following conditions [reciting consideration]"); *Exhibit 4 to the Petition*, ¶ 1(a) (referring to the Grievant's last day of regular employment with the Hospital as "the 'resignation date'"). Therefore, there can be no doubt that the grievant resigned. Accordingly, the Grievant's resignation is not an arbitrable matter pursuant to a strict interpretation of the CBA as provided in Article 10, Section 10.01.

      Even though resignations are not grievable under the CBA, the Arbitrator determined that he had jurisdiction over the grievance, and it was thus arbitrable. The Arbitrator justified his determination solely on the putative language in a document external and unrelated to the CBA that he avers "trumps" the explicit terms of the CBA. *Petition*, ¶ 24. This is in direct contravention to the Grievance and Arbitration Procedure, as the procedure dictated in Article 29 shall be the sole and exclusive method for resolving disputes under the CBA. *Exhibit 1 to the Petition*, Article 29, § 29.05. The Arbitrator's decision that the grievance is procedurally arbitrable is thus patently

contradictory to the terms of the CBA from whence his powers derive. Accordingly, the Arbitration Award should be vacated as an expression in excess of the Arbitrator's powers granted by the CBA.

**2)    Under the explicit terms of the CBA, the Arbitrator lacks the ability to grant the relief sought**

The Court may dismiss a claim if the basis of the claim fails to state a claim upon which relief may be granted. Rule 12(b)(6) Fed. R. Civ. P. Therefore, pursuant to the standards encompassed in the Federal Rules of Civil Procedure, if a claimant can be granted no relief regardless of the nature of the factual allegations, such claims should be dismissed. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1960 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)").

The CBA explicitly states that the Arbitrator may not grant the Union the relief it seeks. *Petition*, ¶ 20 (the Arbitrator erroneously asserts that Paragraph 3 of the Union-Drafted Agreement does not "prevent an arbitrator from awarding any remedy in the process including reinstatement and back pay"). Article 29, Section 29.04 of the CBA explicitly states that, "[i]n any arbitration resulting from a grievance filed under this section [i.e. initiated at Step 3], the decision of the arbitrator <u>shall be prospective only</u> and she/he <u>shall not have the power to order a remedy for any past injury</u> found to have occurred." *Exhibit 1 to the Petition*, CBA, Article 29, § 29.04 (emphasis added). This provision must be followed should a dispute be heard according to the terms of the contract. *Exhibit 1 to the Petition*, Article 29, § 29.05.

The MOU explicitly states that the combined July 5 and September 12 grievances be "moved to" Step 3B of Article 29 of the CBA. *Petition*, ¶ 14. The

grievance was heard pursuant to Step 3B of the CBA's Grievance and Arbitration provision. Thus, no matter how the facts are asserted, the Arbitrator cannot award the Union any non-prospective relief (such as reinstatement or back pay for a past injury).

The Hospital made this argument to the Arbitrator in its post-hearing brief. *Petition*, ¶ 23. However, the Arbitrator found that "Paragraph 3 [of the Union-Drafted Agreement] trumps all the employer's arguments." *Petition*, ¶ 24. Moreover, the Arbitrator demonstrates that he is willing to award a remedy for a past injury in his decision denying the Hospital's Motion to Dismiss. *Petition*, ¶ 20. The Arbitrator thus has complete disregard for the explicit language of the Grievance and Arbitration Provisions of the CBA. Thus, the Arbitrator exceeded his powers in violation of 9 U.S.C. § 10(a)(4). Accordingly, the Arbitration Award should be vacated.

**3)     The explicit terms of the CBA preclude arbitration of settled grievances**

The settlement governing the Grievant's resignation is consistent with the terms of the CBA. The Grievance and Arbitration Procedure of the CBA contains explicit step-by-step instructions for the processing of Union grievances. *See Exhibit 1 to the Petition*, Article 29: Grievance and Arbitration. These instructions must be followed when a dispute is heard pursuant to the contract. *Exhibit 1 to the Petition*, Article 29, § 29.05.

Even assuming *arguendo* the validity of the Union's claim, the only remedy available for a grievance initiated at Step 3 of the Grievance and Arbitration Procedure is limited solely to <u>prospective</u> relief. *Exhibit 1 to the Petition*, Article 29, § 29.04 (emphasis added). It is true that the CBA provides that a grievance may be initiated at Step 3 by the Union by agreement between the parties. *Id.* However, such grievances may <u>only</u> proceed if they are not settled at Step 3. "<u>If the grievance remains unsettled</u>

<u>after Step 3</u>, within fifteen (15) calendar days the parties may engage in non-binding mediation." *Exhibit 1 to the Petition*, CBA, Article 29, § 29.02, Step 4 (emphasis added). "<u>If the dispute or disagreement is not settled at Step 4</u>, the Union may make a request on behalf of both parties to the Federal mediation and Conciliation Service (FMCS)" to request arbitration. *Exhibit 1 to the Petition*, CBA, Article 29, § 29.02, Step 5 (emphasis added). Thus, only if a grievance or disagreement is not settled prior to Steps 4 and 5 of the Grievance and Arbitration Procedure may the Union and/or the Grievant seek arbitration through the FMCS.

Even the explicit language in the proviso to Section 9(a) of the National Labor Relations Act demonstrates that a settled grievance must be honored. The proviso states, "any individual employee… shall have the right at any time to present grievances to… [the]… employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract… then in effect: *Provided further*, That the bargaining representative has been given opportunity to be present at such adjustment." 29 U.S.C. § 159(a).

When the Hospital issued its Corrective Action Form recommending the Grievant's termination, it was the Union that proposed the Grievant resign from her employment in lieu of termination. *Petition*, ¶ 5. Accordingly, the Grievant entered into two negotiated agreements settling any dispute arising from her employment upon advice of her Union representatives and the Union Attorney. *Petition*, ¶ 6. Therefore, the negotiated settlement agreements in concert constitute a settlement of any and all potential grievances that could arise pertaining to Grievant's employment with the

Hospital. And because the settlement was negotiated with the Grievant's Union representatives and the Union Attorney present, the settlement is a valid settlement agreement under the proviso to Section 9(a) of the Act.

When the Union grieved the Grievant's resignation notwithstanding that the matter was settled, the Union and Hospital agreed to initiate the grievance at Step 3 pursuant to the MOU. The president of the Hospital recognized that the matter was fully and validly settled and could therefore proceed no further under the explicit terms of the CBA. However, the Union still seeks arbitration services through the FMCS even though the grievance it seeks to arbitrate was settled prior to Steps 4 and 5.

The Hospital argued that this obvious contradiction demonstrates that the grievance is not procedurally arbitrable under the explicit terms of the CBA. *Petition*, ¶ 23. However, the Arbitrator still held that "Paragraph 3 [of the Union-Drafted Agreement] trumps all the Employer's arguments." *Petition*, ¶ 24; *Exhibit 11 to the Petition*; *Exhibit 2 to the Petition*, p. 17. Accordingly, the Arbitrator not only completely disregards the Grievance and Arbitration Provisions of the CBA that provide only for arbitration of <u>unsettled</u> grievances, he also relies upon an <u>external document</u> to "trump" the clear mandates of the contractual Grievance and Arbitration Procedure. Therefore, the Arbitrator exceeded his powers by allowing the grievance to proceed to arbitration. Accordingly, because the decision is a blatant violation of the Arbitrator's powers as limited by the CBA, the Arbitration Award should be vacated.

**II.  The Court Should Enjoin Any Further Arbitral Proceedings in this Matter Pending the Outcome of the Hospital's Petition**

Notwithstanding that the Arbitrator clearly exceeded the powers granted him by the CBA, the Union insists on pursuing arbitration on the merits of this matter. *Petition*, ¶

28. Moreover, the Arbitrator insists upon arbitrating this matter on the merits in spite of having no authority under the Grievance and Arbitration Provision of the Collective Bargaining Agreement to do so. *Petition*, ¶ 29. Accordingly, the Hospital requests that the Court enjoin any further arbitral proceedings pending its determination of the Hospital's Petition.

## **Conclusion**

WHEREFORE, the Hospital respectfully requests that this Court grant an injunction enjoining further arbitral proceedings in this matter pending the outcome of this Petition, grant its Petition and vacate the Arbitration Award regarding the arbitrability of the Grievant's grievance, and award the Hospital such other and further relief as it deems just and proper.

        Respectfully submitted,

        JACKSON LEWIS LLP


        By: */s/ Electronically Filed*
            Danny W. Jarrett
            George Cherpelis
            James L. Cook
        4300 San Mateo Blvd. NE, Ste. B260
        Albuquerque, NM 87110
        P: 505-878-0515
        F: 505-878-0398
        **ATTORNEYS FOR ST. VINCENT HOSPITAL**

We hereby certify that we served via first class mail, postage prepaid, a true and correct copy of the foregoing pleading upon the following counsel this <u>22nd</u> day of <u>October, 2008</u>:

Shane C. Youtz, Esq.
Youtz & Valdez, P.C.
900 Gold Ave. SW
Albuquerque, NM 87102
P: 505-244-1200
F: 505-244-9700
**FOR DISTRICT 1199NM, NATIONAL UNION OF HOSPITAL AND HEALTHCARE EMPLOYEES, LOCAL 1199, AFSCME, AFL-CIO**

We hereby certify that we electronically filed the foregoing pleading through the CM/ECF system on October 22, 2008, which caused the following counsel to be served by electronic means, as documented on the Notice of Electronic Filing:

Danny W. Jarrett
jarrettd@jacksonlewis.com
George Cherpelis
cherpelisg@jacksonlewis.com
James L. Cook
cookj@jacksonlewis.com
**ATTORNEYS FOR ST. VINCENT HOSPITAL**

JACKSON LEWIS LLP

By: */s/ Electronically Filed*_____