## RUSSELL E. BERGSTEDT, JR.

**Arbitrator**

3709 E. Dakota Dr.
Phoenix, Arizona 85044
(480) 961-8735
E-Mail: bergstedtr@aol.com

Danny W. Jarrett
Jackson Lewis LLP
4300 San Mateo Blvd.  NE Ste. B260
Albuquerque, NM 87110

Shane C. Youtz
Youtz & Valdez
900 Gold Ave. SW
Albuquerque, NM 87102

August 16, 2008

Re: FMCS Case # 08-50178

Enclosed you will find my opinion and award, and a progress billing for fees and expenses.  Receipts for expenses will be provided upon request.

The following dates are available for a hearing:  September 8 & 9, 22 & 23, October 15 & 16, or November 5, 6, & 7.

Cordially,
Russell E. Bergstedt, Jr.

Enclosures

**EXHIBIT 2**

In the Matter of Arbitration

between

St. Vincent Regional Medical Center
Santa Fe, New Mexico

and

National Union of Hospital and Healthcare Employees
NUHHCE/1199

Case No. 08-50178
Termination/Arbitrability

before

Russell E. Bergstedt, Jr.
Impartial Arbitrator

Opinion and Award of the Arbitrator

Time and Place of Hearing
9:00 AM, July 2, 2008
Santa Fe, New Mexico

1

**EXHIBIT 2**

<u>ARBITRATION AWARD</u>

In the Matter of:

NUHHCE/1199

     and

St. Vincent Regional Medical Center

FOR THE UNION:

                                                  Shane Youtz
                                                  Youtz and Valdez, P.C.

FOR THE EMPLOYER:

                                                  George Cherpelis
                                                  Danny W. Jarrett
                                                  Jackson Lewis, LLP

IMPARTIAL ARBITRATOR:

                                                  Russell E. Bergstedt, Jr.
                                                  Phoenix, Arizona

By the terms of the agreement between St. Vincent Regional Medical Center, hereinafter referred to as the "Employer," and the National Union of Hospital and Healthcare Employees, NUHHCE/1199, hereinafter referred to as the "Union," Russell E. Bergstedt, Jr., was selected by the parties to serve as impartial arbitrator. A hearing was held at the Residence Inn, Santa Fe, New Mexico, on July 2, 2008. Full opportunity was afforded the parties for the introduction of evidence, examination, discussion and oral arguments. Following agreement to exchange post-hearing briefs the hearing was declared closed on July 2, 2008.

EXHIBIT 2

STATEMENT OF FACTS:

- The grievant, Lydia Froschle, was employed as a Radiology Technician at St. Vincent Regional Medical Center.

- On September 4, 2007, the Grievant was provided a "Corrective Action Form" recommending her termination from her employment with SVRMC. (Exhibit A)

- Upon review of the "Corrective Action Form", the Union offered to have the Grievant resign in lieu of being discharged.

- On September 5, 2007, the Grievant, after consulting with her Union representatives and the Union's Attorney, entered into two negotiated separation agreements with SVRMC. (Exhibits B & C).

- At the insistence of the Union's Attorney, and agreed to by the Employer, paragraph 3 was included in Exhibit B.

> " 3. All parties understand and acknowledge that the Union (District 1199 NM) has certain grievances pending which relate to Ms. Froschle's employment and may file additional grievances in the future which relate to Ms. Froschle's separation of employment (including a grievance for termination without just cause). Parties agree and understand that the terms of the agreement shall not prejudice the right of the Union to pursue such grievances through the contractual process and this agreement shall not waive any claims which the Union may make, nor may this agreement prevent an Arbitrator from awarding any remedy in that process including

3

EXHIBIT 2

reinstatement and/or back pay, with any such award to be offset by

payments made under the Agreement."

- On September 14, 2007, a "Memorandum of Agreement", (Exhibit D) agreed to

  by both parties, combined a grievance filed on behalf of the Grievant from July 5,

  2007, alleging discrimination for Union activities, with a grievance filed

  September 13, 2007, alleging termination without just cause.

- The combined grievances were moved to Step 3B as outlined in Article 29 of the

  "CBA".

- The grievances were heard by Hospital President and CEO, Alex Valdez.

- Valdez issued his decision (Exhibit F) on September 25, 2007, denying the

  Union's grievances.

- A panel of arbitrators was requested from the Federal Mediation and Conciliation

  Service, (FMCS) and the grievances moved to arbitration.

- Following the selection of this arbitrator, the Employer moved that the case be

  dismissed.  The Employer's motion to dismiss was denied.

- The Employer requested the scheduled arbitration hearing deal only with the issue

  of arbitrability.

- A hearing on the issue of arbitrability was conducted on July 2, 2008.

4

EXHIBIT 2

ISSUE

Is the grievance arbitrable under the terms of the agreement(s) between SVRMC and the NUHHCE/1199?

RELEVANT PROVISIONS OF THE AGREEMENTS

Technical Agreement between St. Vincent Hospital and District 1199 NM

ARTICLE 10 EMPLOYEE DISCIPLINE

10.01   No employee shall be discharged, disciplined, or suspended except for just cause.  Any disciplinary action taken shall be subject to the grievance and arbitration Article of this Agreement.

10.02   An employee who is disciplined may request the presence of a delegate to represent him/her.  There will be no further discussion of the grievance with the employee until the delegate arrives to represent him/her unless the delegate refuses to attend.

10.03   Documented corrective actions more than two years old shall not serve as the basis for further disciplinary action.  Upon written request of the employee involved, corrective actions more than two years old shall be removed from the employee's personnel file.  Copies of corrective actions removed from the employee's personnel file may be retained by Human Resources.

5

EXHIBIT 2

ARTICLE 29 GRIEVANCE AND ARBITRATION

29.01   The Union or any employee in the bargaining unit who has a dispute or

disagreement of any kind or character arising out of or in any way

involving the interpretation or application of this Agreement shall submit

the dispute or disagreement for resolution under the procedures and in the

manner set forth in this Article.  This Article and the rights and obligations

of the parties hereunder shall be applicable only to the disputes and

disagreements which arise during the term of this Agreement or extension

hereof.

Management's primary representative at each step will be limited to the

designated management representative as specified in the contract.  When

the management organizational structure changes, the Union shall be

notified promptly to facilitate resolution of grievances.

29.02   The dispute or disagreement shall be submitted to the following:

Step1.  The employee and/or a Union delegate shall promptly discuss the dispute

or disagreement informally with her/his direct supervisor (team supervisor,

manager).  Resolution of matters raised at Step 1 shall not be binding upon the

Hospital as a past practice or interpretation of this Agreement.

Step 2.  The employee and the Union delegate shall submit in writing the dispute

or disagreement promptly (but no more than ten days excluding weekends and

holidays) upon the discovery by the employee of the event giving rise to the

dispute or disagreement to the department director for such purpose.  An

employee having a dispute or disagreement shall be entitled to be accompanied by

6

EXHIBIT 2

a Union delegate in Step 2 if there are any discussions between the employee and a representative of the Hospital. The department director shall give a written response to the Union and the employee within five days, excluding weekends and holidays, or the grievance shall be deemed denied.

Step 3. If the dispute or disagreement is not settled in a manner that is satisfactory to the Union and the Hospital in Step 2, the Union shall resubmit the grievance in writing and deliver or mail it to the VP of Operations or the VP of Operations' designated representative for such purpose. The resubmitted grievance will be delivered no more than five days (excluding weekends and holidays) after the notification of denial in Step 2 or after the failure of the department director to act within the appropriate time limit. The written grievance shall include a statement of the grievance, date of the occurrence, the parties involved and the provisions of the Agreement alleged to have been violated. The VP of Operations or the VP of Operations' designated representative shall have five calendar days upon receipt of the written grievance to answer in writing said grievance or it shall be deemed denied. If the grievance is denied by the VP of Operations or the VP of Operations' designated representative, the grievance will be considered by the president of the Hospital, or the president of the Hospital's designated representative, within seven calendar days of the denial of the grievance at this step.

Step 4. If the grievance remains unsettled after Step 3, within fifteen (15) calendar days the parties may engage in non-binding mediation. The mediator

7

EXHIBIT 2

will be one of the Commissioners from the Federal Mediation and Conciliation Service.

Step 5. If the dispute or disagreement is not settled by Step 4, the Union may make a request on behalf of both parties to the Federal Mediation and Conciliation Service (FMCS) to submit a list of seven names of qualified arbitrators residing in New Mexico, Texas, Arizona, Utah, Colorado, or Oklahoma. The request for arbitration must be made within ten days, excluding weekends and holidays, after the Hospital has denied the grievance and shall be timely if deposited in the mail within said ten day period. Upon receipt of the list or arbitrators by both parties and within seven days, excluding weekends and holidays; of such receipt each party shall strike three names in alternation with the aggrieved party striking the first name. The un-stricken name will be empowered to act as arbitrator.

29.03  The decision of the arbitrator shall be final and binding upon each party. However, the arbitrator shall not have the power to add to, subtract from, or in any way modify the terms of this Agreement, and shall limit her/his decision strictly to an interpretation of the language in this Agreement. If an arbitrator awards back pay, she/he shall reduce the award by any earnings, including unemployment compensation received by the aggrieved party during the period of the award except for sums attributable to other employment of the employee ongoing at the time she/he last worked for the Hospital. The fees and expenses of the arbitrator shall be borne equally by the parties.

8

EXHIBIT 2

29.04   By written agreement between the parties, any grievance the Union may have against the Hospital involving the interpretation of this Agreement may be initiated at Step 3 by the Union.  In any arbitration resulting from a grievance filed under this section, the decision of the arbitrator shall be prospective only and she/he shall not have the power to order a remedy for any past injury found to have occurred.

29.05   No grievances may be submitted to arbitration by the Union under Step 4 unless the time limits set forth in Steps 2 and 3 have been strictly complied with.  Any grievance which is submitted after such time limits have expired shall be forfeited and waived by the aggrieved party.  Time limits may be extended only by mutual agreement in writing and signed by both the Union and the Hospital.  It is the intention of the parties that the grievance procedure set forth herein shall be the sole and exclusive remedy of the parties for any alleged breach of this Agreement.  Therefore, resort to any other remedy at law or at equity, administrative or judicial, shall constitute a waiver of the grievance.

29.06   At any stage of the grievance procedure outlined above, the Executive Board of the Union shall have full authority to settle or dispose of a grievance on behalf of an employee.

EXHIBIT 2

AGREEMENT BETWEEN LYDIA FROSCHLE AND ST. VINCENT REGIONAL

MEDICAL CENTER DATED SEPTEMBER 5, 2007

Paragraph 3.  "All parties understand and acknowledge that the Union (District 1199

NM) has certain grievances pending which relate to Ms. Froschle's employment

and may file additional grievances in the future which relate to Ms. Froschle's

separation of employment (including a grievance for termination without just

cause).  Parties agree and understand that the terms of the agreement shall not

prejudice the right of the Union to pursue such grievances through the contractual

process and this agreement shall not waive any claims which the Union may

make, nor may this agreement prevent an Arbitrator from awarding any remedy in

that process including reinstatement and/or back pay, with any such award to be

offset by payments made under the Agreement."


EMPLOYER POSITION

The Employer considers the issue of arbitrability to be a "procedural" issue …

"whether grievance procedures or some part of them apply to a particular dispute,

whether such procedures have been followed or excused, and whether the un-excusable

failures to follow them avoids the duty to arbitrate."  The Employer contends that the two

releases contractually bound the parties and the Grievant as having unequivocally

agreeing to 'resign' and waiving her right to grieve any matter arising from her

employment.  The Employer points to the relevant language of the agreement … "the

agreement shall not prejudice the right of the Union to pursue such grievances through

the contractual process…"  Noting that "nowhere does the language of Exhibit B assert

10

**EXHIBIT 2**

that the Hospital agreed to arbitration as such.  At best, the Hospital agreed only to allow the Union to pursue the grievances under the "contractual process."

The "contractual process" does not contemplate the arbitration or even grievability of a 'voluntary resignation' as presented.

The Employer questions what benefit it would receive by agreeing to provide considerations to the grievant and still face arbitration of an alleged 'unjust' termination.

The Employer points that to allow a grievance to proceed would amount to amending Article 10 of the CBA, to include the terms resignation as a grievable subject, or Article 29, Step 5 to include "settled grievance" as being subject to arbitration.

The Employer further asserts that the grievance is not cognizable under Article 10 nor is it grievable under Article 29.  "The Parties and the Union are bound by the terms encompassed by the 'four corners' of the Collective Bargaining Agreement.  The parties are guided by the provisions of the CBA and the Arbitrator not only derives his power from the CBA but his authority is constrained by the language of the Grievance and Arbitration provisions set out in Article 29.02 Step 5.  To reiterate:

> "…[T]he arbitrator shall not have the power to add to, subtract from, or in any way modify the terms of this Agreement and shall limit her/his decision strictly to an interpretation of the language of this Agreement…."

Even the language inserted into the Union's version of the Release specifically provides that the terms of the Grievance and Arbitration shall be followed, by stating that the Union may

> "…pursue such grievances through the **contractual process**… ."

The Employer states "the only 'contractual process' available to the parties is that process set out in Article 29." That procedure specifically states, in Step 5 of Article

11

EXHIBIT 2

29.02, that only a dispute or disagreement 'that …is not settled….' may be advanced to the next step.  Here, the Employer believes the grievance has been settled, with the 'blessing' of the Grievant's Union representative and with the advice of Union counsel.

The Employer offers that the CBA does not contemplate grieving over a resignation and considers this action a 'voluntary resignation': further that grievability is the mechanism triggering the grievance procedure.  There being no grievance there is then no issue to grieve and there can be no arbitration.  To allow pursuit of a 'non-grievance' would constitute a change in the terms of the grievance procedure, an action the Arbitrator cannot permit when the CBA identifies the issues that are grievable.

The Employer moves to challenge that only unsettled disputes may proceed to arbitration and the Grievant's settlement of her dispute, by accepting the terms and conditions exchanged for her resignation, cannot be abandoned by claiming Paragraph 3, which allows both a settlement yet preserves her right to grieve the same event.  Had the Union intended to grieve the termination it should have done so and refused to allow the Grievant's resignation and settlement.

The Employer does not contest the Union's right to bring grievances.  In fact, the Union did grieve the claim of an unjust termination through Step 3B of the CBA.

The Employer concludes it is clear that the Grievant, with the advice and counsel of her Union, entered into a contract with SVRMC.  The Grievant offered to resign in lieu of discharge and the offer was accepted.  Both parties entered into a valid binding settlement.  To allow the grievance to proceed to arbitration would damage the good-faith in Union-Management relations and undermine the reliability of any future grievance

12

EXHIBIT 2

negotiations and settlements.  Accordingly, the Employer seeks to have the grievance

deemed not arbitrable and denied.


## UNION POSITION

The parties agreed, as indicated (in paragraph 3), that the separation agreement

was intended to preserve the right of the Grievant and the Union to grieve and arbitrate

the termination for 'just cause'.  The arbitration was agreed upon in advance by the

parties.  Upon receiving notice of "immediate termination of employment" on September

4, 2007, the Union sought to have and allow the Grievant the opportunity to leave with

some dignity, while preserving the right to arbitrate the issue whether the Grievant had

been terminated with 'just cause'.  The issue was preserved by explicit agreement in

Paragraph 3 … "All parties understand and acknowledge that the Union (District

1199NM) has certain grievances pending which relate to Ms. Froschle's employment and

may file additional grievances in the future which relate to Ms. Froschle's separation of

employment (including a grievance for termination without just cause)."

The Union feels that given the 'plain language' of the agreement, it is clear the

parties intended to 'carve out' the right to arbitrate the dispute.  By agreement, the

Employer accepted and agreed that this case could be arbitrated and now, contrary to the

parties' agreement, seeks to avoid arbitration.

The Union maintains that the termination was without 'just cause' and improper

under the CBA.  The Grievant, with assistance of the Union, negotiated an agreement

where she waived her civil claims (Title VII and other civil claims) in order that she be

EXHIBIT 2

allowed certain benefits, including the Employer's agreement not to contest unemployment benefits.

The Employer agreed to allow the Grievant to retain her rights to object to her termination in exchange for her waiving certain rights associated with her employment.

In order to make 'absolutely' clear, according to the Union, that the arbitrator would not be limited to any terms of the agreement, parties stipulated nothing in the settlement agreement could be construed to "prevent an Arbitrator from awarding any remedy in the process including reinstatement and/or back pay." Further, the Employer wanted an offset of any arbitrator's award for the money and considerations it had paid under the separation agreement. The agreement contains a provision allowing for such an offset "any such award to be offset by payments made under the agreement."

The Union summarizes, "it was all parties' agreement and understanding that the arbitration currently before the arbitrator would take place and all parties intended that the arbitrator have the authority to determine whether Ms. Froschle's termination was with just cause and to allow the Arbitrator to issue an appropriate remedy."

Further, the Employer confirmed that the parties understood they were granting the arbitrator the authority to rule on the 'just cause' issue by the testimony of Ms. Dominguez. Ms. Dominguez admitted the Employer inserted language to protect its right to an offset in this contemplated arbitration.

Finally, the Grievant testified that her willingness to sign the settlement agreement, for such meager consideration, was based on her understanding that the parties intended to arbitrate her termination on the merits.

14

**EXHIBIT 2**

The Union requests that the Arbitrator find that this matter may proceed on the merits and issue an order for the arbitration.

OPINION OF THE ARBITRATOR

The negotiated settlement/release agreement is very explicit in its language with regard to the understanding and acknowledgment that the Union had certain grievances pending which related to the Grievant's employment and opportunity to file additional grievances, including a grievance for termination without just cause. The agreement specifically addresses that the terms of the agreement will not prejudice the right of the Union to pursue such grievances through the 'contractual process'. The agreement does nothing to prevent an Arbitrator from awarding any remedies, including reinstatement and/or back pay, and provides the Employer an offset for any payments made in consideration for the execution of the agreement.

The Employer presents this as a "procedural" issue that certain procedures within the CBA have been followed or excused and whether the 'un-excusable' failures to follow them avoids the duty to arbitrate. The Employer states, "no where does the language of Exhibit B assert that the Hospital agreed to arbitration as such…agreed only to allow the Union to pursue the grievance under the "contractual process." To support this statement would deny the specific language and acknowledged understanding of Paragraph 3. The language is clear and unequivocal, the parties agreed to allow the Grievant and the Union to grieve and arbitrate the Grievant's termination for 'just cause'.

The Employer's position that the "contractual process" does not contemplate the arbitration or even grievability of a "voluntary resignation" is flawed. The parties

15

EXHIBIT 2

negotiated a 'release' agreement with certain considerations for the Grievant waving her rights under Title VII and other civil remedies in exchange for among other benefits the Employer's agreement not to contest her unemployment claim.  This is a negotiated separation agreement and release, not a voluntary resignation.

The Employer points that to allow a grievance to proceed would amount to amending Article 10 of the CBA, to include the term resignation as a grievable subject.  The Employer, by agreeing to the insertion of Paragraph 3, allowed this issue to proceed through the grievance process up to and including arbitration.  There can be no mistake with regard to the understanding the parties had <u>at the time</u> the release agreement was negotiated, the Union preserved the right of the Grievant and the Union to pursue such grievances, including a grievance for termination without 'just cause' and the Employer understood this to be in place.

The Employer conveys this as a "settled grievance" and stipulates that Article 29.02 only recognizes disputes or disagreements that are not settled may be advanced to the next step.  To assert that the issue has been settled, as a result of the decision rendered by CEO Valdez at Step 3B, would validate that the Grievant, by accepting the terms and conditions, exchanged for her 'negotiated resignation', has relinquished her right to file a grievance.  The Grievant and Union have not relinquished that right, but rather agreed to a 'negotiated settlement', a waiving of future civil claims while preserving the right to grieve the termination without 'just cause'.

As the Employer expressed, to allow both the agreement, 'settlement', and the right to pursue the grievance to arbitration would be akin to "having it both ways"...the

16

EXHIBIT 2

negotiated agreement with Paragraph 3 allows both a negotiated resignation and preservation of the right to pursue a grievance for termination without 'just cause'.

There is no way to get around the intent and meaning of Paragraph 3. The Employer has presented very thoughtful and persuasive arguments and absent of Paragraph 3 would have prevailed. Paragraph 3 trumps all the Employer's arguments and permits this case to move to arbitration.

## AWARD

The issue of whether the grievance is arbitrable under the terms of the agreements between the parties is affirmed. This grievance is arbitrable and will move to arbitration.

The Arbitrator retains jurisdiction over this matter to resolve any disputes that may arise with respect to implementation of the terms of this award.

August 16, 2008

Phoenix, Arizona

Russell E. Bergstedt, Jr., Arbitrator

17

EXHIBIT 2

# RUSSELL E. BERGSTEDT, JR.

**Arbitrator**                                    3709 E. Dakota Dr.
                                                  Phoenix, Arizona 85044
                                                  (480) 961-8735
                                                  E-Mail: bergstedtr@aol.com

## STATEMENT OF CHARGES

| Services Performed (at $750 per day) | Days |
|---|---|
| Motion to dismiss Review, Study & Preparation | 2 |
| Responses & communications March 20 thru May 23 | 1 |
| Hearing (July 2, 2007) | 1 |
| Travel (DAL-ABQ-PHX) | ½ |
| Study & Preparation of Opinion and Award | 2 |
| Total for Service Days: | $4, 875.00 |

Expenses

| | |
|---|---|
| Lodging (Residence Inn) | $240.22 |
| (Comfort Inn) | 50.43 |
| Car Rental (Enterprise) | 190.36 |
| Airfare (DAL-ABQ) | 137.50 |
| (ABQ-PHX) | 67.00 |
| Meals | 49.19 |
| Total Expenses: | $734.70 |
| Total Fee Payable: | $5,609.70 |
| Hospital one-half share | $2,804.85 |
| Union one-half share | $2,804.85 |

The respective shares should be forwarded within 30 days to the above address, payable to Russell E. Bergstedt, Jr.

If required for reporting purposes:  Tax I.D. #  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
                                     (TPIN)  #  35128000

# EXHIBIT 2