## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

———————————

ST. VINCENT HOSPITAL,

      Plaintiff,

      v.                         Case No. 08-CV-984 WJ-RLP

DISTRICT 1199 NM, NATIONAL UNION
OF HOSPITAL and HEALTHCARE EMPLOYEES,
LOCAL 1199, AFSCME, AFL-CIO,

      Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR ORDER CONFIRMING ARBITRATION AWARD and DENYING PLAINTIFF'S PETITION FOR ORDER VACATING ARBITRATION AWARD

THIS MATTER comes before the Court upon Defendants' Motion for an Order Confirming Arbitration Award, filed November 14, 2008 (**Doc. 4**).  In this case, Plaintiff St. Vincent Hospital ("Hospital") has filed a Petition for an Order vacating the Arbitrator's award regarding arbitrability.  Compl. (**Doc. 1**).  In the instant motion, Defendants, who are members of hospital and healthcare union employees ("Union"), seek to confirm that same award.  Having considered the parties' briefs and the applicable law, I find that Defendants' motion is well-taken and the Arbitrator's Award is affirmed; and that Plaintiff's motion is not well-taken and will be denied.

### Background

The question before the Court is whether the Arbitrator had the authority to determine whether a grievance involving a Union employee was arbitrable.  The Hospital contends that the matter should have been resolved through the process set forth in the Collective Bargaining

Agreement ("CBA") between the Hospital and the Technical Employees' Unit. See Ex. 1 to Petition.

Lydia Froschle worked as a radiology technician at the Hospital.  On July 5, 2007, the Union filed a grievance for Ms. Froschle, alleging discrimination for Union activities.

On September 4, 2007, the Hospital issued a "Corrective Action Form" recommending that Ms. Froschle be terminated from employment at the Hospital for alleged work place violations.

On September 5, 2007, the parties negotiated and entered into two Agreements ("Settlement Documents") under which Ms. Froschle agreed to submit her resignation as of September 5, 2007, in consideration for the terms and conditions set forth in the Settlement Documents.  The Hospital drafted the agreement between Ms. Froschle and St. Vincent Hospital ("Release Agreement"). It was signed by the Hospital, Ms. Froschle, and witnessed by a Union official.  The Release Agreement releases the Hospital from liability for

> "any and all claims which were or could have been raised . . . up through the resignation date, including, but not limited to, claims for wrongful discharge, defamation, wages, breach of contract, promissory estoppel, detrimental reliance, negligence, attorneys' fees, tort damages, e mployment discrimination, or any claim for employment rights or damages arising under state, federal, or local law."

Ex. 4, ¶ 1(b).

The Union Attorney drafted the other Agreement ("Union-Drafted Agreement") which is signed by the Hospital and Ms. Froschle and states in part:.

> All parties understand and acknowledge that the Union (District 1199NM) has certain grievances pending which relate to Ms. Froschle's employment and **may file additional grievances in the future which relate to Ms. Froschle's separation of employment (including a grievance for termination without just cause).** Parties agree and understand that the terms of the agreement (which is defined as the agreement and incorporated release signed by Ms. FROSCHLE)

2

> shall not  prejudice the right of the Union to pursue such grievances through the contractual process and this agreement shall not waive any claims which the Union may make, nor may this agreement prevent an Arbitrator from awarding any remedy in that process including reinstatement and/or back pay, with any such award to be offset by payments made under the Agreement.

Ex. 3, ¶ 3 (emphasis added).

On September 12, 2007, the Union filed the grievance alleging that Ms. Froschle was terminated without just cause.  The only grievance actually pending for Ms. Froschle at the time both Agreements were negotiated was the one dated July 5, 2007, alleging discrimination for Union activities.

On September 14, 2007, the parties agreed to combine the grievances alleging both discrimination for Union activities and termination without just cause,  and to move to "Step 3B of Article 29 of the CBA" – meaning that the grievances would be heard by the Hospital President and CEO, Alex Valdez.  Ex. 6; see also Doc. 1 at 4, n.3.

Mr. Valdez denied the Union's grievances on September 25, 2007, determining that neither of the grievances had merit since Ms. Froschle had already resigned her position and because portions of the CBA relied on by the Union in its discrimination grievance were inapposite to the grievance.

The grievances moved to arbitration when the Union requested arbitration regarding Ms. Froschle's resignation.  The Hospital contested the arbitrability of the matter and moved to dismiss.  The Hospital contended that the Arbitrator lacked subject matter jurisdiction to hear the grievance, based on the language in the Settlement Documents.  Ex. 8.  On February 15, 2008, the Arbitrator denied the Hospital's motion to dismiss.  At the request of the Hospital, the arbitration proceeding was limited to the sole issue of the arbitrability of the grievance.   The Arbitrator found that the grievance was arbitrable and that the issue would proceed to arbitration.

Ex. 2.  Plaintiff seeks to vacate this award regarding arbitrability and also to enjoin the arbitrator from further arbitral proceedings pending this Court's decision on the Petition.

**Discussion**

Plaintiff contends that the Arbitrator exceeded his powers in violation of the Federal Arbitration Act, 9 U.S.C. § 10(a)(4) when he determined that the grievance underlying this lawsuit was procedurally arbitrable.[1] Plaintiff contends that Ms. Froschle's grievance is not procedurally arbitrable under the terms of either Settlement Documents (Exhibit 3 and 4) in that resignations are not grievable under the CBA.  The Hospital also contends that the CBA does not provide for the arbitration of resignations.  Plaintiff also claims that the terms in the Union-Drafted Agreement (Ex. 3) are subject to the limitations contained in the Release Agreement (Ex. 4), which contained extensive waiver and release provisions dealing with – inter alia – federal, state and local anti-discrimination laws.

**I.      Legal Standard**

A court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942-944 (1995); see Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 400, 403-04 (1967) (When the parties' contract contains an arbitration clause and the dispute presented in litigation is within the scope of that arbitration provision, the court must enforce the arbitration provision and the claims must be arbitrated rather than litigated).

The United States Supreme Court has repeatedly held that arbitration clauses are to be

---

[1] Under 9 U.S.C. § 10(a)(4), a federal district court may vacate an arbitration award where the arbitrator exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

liberally enforced, in accord with Congress' declaration of a strong national policy favoring arbitration of disputes.  See, e.g., Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-942 (1983); see also, Riley Manuf. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 778 (10th Cir. 1998).  Arbitration agreements are generally valid, irrevocable, and enforceable.  9 U.S.C. § 2; Alcaraz v. Avnet, Inc., 933 F.Supp. 1025, 1027 (D.N.M. 1996).  The Federal Arbitration Act expresses a strong federal policy favoring arbitration agreements, and any doubts about what issues can be referred to arbitration should be resolved in favor of arbitration.  Id. at 1027.

I.    **Analysis**

Here, the parties do not appear to dispute that they agreed to submit the issue of arbitrability to an arbitrator.  In fact, it was at the Hospital's request that the arbitration proceeding was limited to the issue of arbitrability.  The issue here is whether the Arbitrator incorrectly determined that he had the authority to determine whether Ms. Froschle was terminated with just cause.

The Hospital contends that the language in paragraph 3 of the Union-Drafted Agreement does not demonstrate an intent that the Union and the Hospital agreed to arbitrate additional grievances that would be filed in the future (including a grievance for termination without just cause), and that at best, the Hospital agreed only to allow the Union to pursue grievances through the "contractual process" under the CBA.

Under the CBA, the Union has the right to appeal the termination under the grievance and arbitration article.  Ex. 1 at 6 (Article 10, § 10.1 ("Employee Discipline").  Plaintiff argues that there is no provision in the CBA that allows parties to submit resignations to arbitration, and thus that the Arbitrator incorrectly determined that the matter would proceed to arbitration.

Plaintiff further contends that the parties did not agree to arbitrate Ms. Froschle's resignation.

The Court agrees with Plaintiff in that the CBA does not provide for arbitration of resignations. Without more, it would seem that the Arbitrator would have stepped outside his authority in finding that the grievance on termination without just cause was arbitrable. However, there *is* more to consider in this case because the parties did indeed agree to arbitrate Ms. Froschle's subsequent grievances as part of the Settlement Documents, particularly in paragraph 3 of the Union-Drafted Agreement ("Paragraph 3"). The Arbitrator found that the language of Paragraph 3 was "clear and unequivocal" and that it trumped the Hospital's arguments – and so does the Court. In Paragraph 3, the parties agreed to allow Ms. Froschle and the Union to grieve and arbitrate Ms. Froschle's termination for just cause.

Plaintiff considers Ms. Froschle's voluntary resignation a "settlement" under the CBA, which renders the grievance no longer procedurally arbitrable. Plaintiff's position that the "contractual process" does not contemplate the arbitration or even grievability of Ms. Froschle's resignation has several weakness.

First, at time of the negotiations of the Settlement Documents, the parties clearly preserved Ms. Froschle's right to pursue her grievance for termination without just cause. By agreeing to the insertion of Paragraph 3 into the Union-Drafted Agreement, the Hospital clearly states that the issue of termination without just cause would proceed through the grievance process up to and including arbitration. The language in that provision also envisions that an Arbitrator would not be precluded "from awarding any remedy in that process including reinstatement. . . ." Ex. 3, § 3.  This language clearly envisions an arbitration of the termination without just cause claim.

In an effort to avoid the unmistakable language in Paragraph 3, the Hospital points out

that an Arbitrator would not be able to make an award for the grief relating to termination without just cause because such an award would constitute a remedy for a "past injury," which is impermissible under the CBA.[2]  The Hospital wants it both ways.  It argues that relief for the termination grievance would not be allowed because such relief would be for "past injury" – and therefore impermissible – but at the same time argues that because Ms. Froschle resigned, no relief is possible under the CBA because resignations are not grievable.  Such a reading renders Paragraph 3 of the Union-Drafted Agreement entirely meaningless.  See Levenson v. Mobley, 106 N.M. 399, 501-02 (1987) (where terms of an agreement are plainly stated, the intentions of the parties must be ascertained from the language used).

Second, Ms. Froschle's voluntary resignation was a negotiated term of the Settlement Documents.  Ms. Froschle waived her rights under Title VII and other civil rights laws in exchange for certain benefits – for example, the Hospital's agreement not to contest her unemployment claim.  Ms. Froschle's resignation cannot be considered in isolation, apart from other negotiated terms.   Testimony given at the arbitration also confirmed that the parties' intention in inserting Paragraph 3 was to preserve the issue of whether Ms. Froschle was terminated with just cause, and that the agreements that were signed would not prejudice the rights of the Union to arbitrate the matter.  See Union Ex. 1 at 5-7 (excerpted portions of arbitration hearing transcript).  Nevertheless, the Hospital now wants to execute an "about-face" by arguing now that Ms. Froschle has resigned, there is nothing to grieve, much less arbitrate. Plaintiff relies on the Settlement Documents to establish the resignation (and therefore non-

---

[2]  Section 29.04 of the CBA states that "[i]n any arbitration resulting from a grievance filed under this section, the decision of the arbitrator shall be prospective only and she/he shall not have the power to order a remedy for any past injury found to have occurred."  Ex. 1.

grievability of Plaintiff's termination from employment) but at the same time argues that other negotiated terms in the agreements should not be considered.

The Hospital claims that the Union-Drafted Agreement is a "corruption" of the terms and limitations set forth in the Release Agreement, Ex. 8 at 3, and that the terms of the Union-Drafted Agreement are subject to the Release Agreement.  However, the Court is puzzled as to the basis for this contention since, as Plaintiff correctly points out, the Release Agreement is referenced in the Union-Drafted Agreement.[3]  Thus, because the Union-Drafted Agreement acknowledges the Release Agreement within its terms, it is clear that the terms of both of the documents stand together. See Santa Fe Technologies v. Argus Networks, Inc. et al., 131 N.M. 772, 788   (Ct.App. 2002) (arbitration clauses are governed by contract law); RTC v. Ocotillo W. Joint Venture, 840 F.Supp. 1463, 1482 (D.N.M. 1993) (the object of all rules of interpretation is to arrive at the intention of the parties as it is expressed in the contract).  The Release Agreement provides that Ms. Froschle waived her right to bring certain claims against the Hospital, but the Union-Drafted Agreement expressly preserves her right (and the Union's right) to file a grievance for termination without just cause, and envisions such a claim being arbitrable.

Based on the foregoing, the Arbitrator correctly determined that Ms. Froschle's grievance for termination without just cause was arbitrable.

## Conclusion

The Court concludes that the Arbitrator did not exceed his powers in violation of the Federal Arbitration Act, 9 U.S.C. § 10(a)(4) when he determined that the grievance underlying

---

[3]  Paragraph 1 in the Union-Drafted Agreement states that "Lydia Froschle hereby agrees to tender her written resignation effective September 5, 2007 and also agrees to sign a personal liability release. . . ."  Ex. 3.

this lawsuit was procedurally arbitrable.  Plaintiff's contention that Ms. Froschle's grievance is not procedurally arbitrable under the terms of the agreements which the parties negotiated is unsupported by the language in the agreements, nor is this contention consistent with notions of fair play and contract law.

In sum, the Arbitration Award will be confirmed.  At the same time, because the Court affirms the award, Plaintiff's petition for an order vacating the award will be denied.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for an Order Confirming Arbitration Award (**Doc. 4**) is hereby GRANTED for reasons set forth above in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Plaintiff's Petition for an Order vacating the Arbitration Award (**Doc. 1**) will be DENIED.

The Court will enter a Judgment contemporaneously with this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE